IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:16-CR-088

| | |
|---|---|
| UNITED STATES | ) |
| | ) |
| vs. | ) |
| | ) |
| BRIAN JAMES LAUGHTER, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S REQUEST FOR REVIEW OF DETETION ORDER

The United States, by and through the United States Attorney for the Western District of North Carolina, respectfully submits this opposition to the defendant's Request of Review of Detention Order, filed August 24, 2016. The defendant was indicted on August 2, 2016, on charges of possessing an unregistered sawed-off shotgun, an unregistered firearm silencer, transferring a sawed-off shotgun to another person, transferring a firearm silencer to another person,

1

distributing a quantity of methamphetamine, and carrying and using a firearm during and in relation to a drug trafficking crime. On August 10, 2016, Magistrate Judge Dennis Howell conducted a detention hearing, at the close of which he ordered the defendant to be detained pending trial on grounds of dangerousness. Judge Howell entered his detention order on August 10 and an addendum on August 11, which the defendant now asks this court to review and vacate. This Court's review is *de novo*. *United States v. Clark*, 865 F.2d 1433, 1437 (4th Cir. 1989). The Fourth Circuit's review of this Court's findings would be examined for clear error. *United States v. Williams*, 753 F.2d 329, 333 (4th Cir. 1985). The Government respectfully opposes the defendant's request.

The Bail Reform Act, 18 U.S.C. § 3141 *et seq.*, states that a defendant may be detained pending trial where the Government shows "that no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community . . . ." 18 U.S.C. § 3142(e). Once probable cause has been established that certain crimes have been committed, a rebuttable presumption is established that no

condition or combination of conditions will reasonably assure the safety of another person or the community. *See* 18 U.S.C. § 3142(e)(3). Where, as here, a grand jury has returned an indictment, this conclusively determines the existence of probable cause. *See Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975); *Durham v. Horner*, 690 F.3d 183, 189 (4th Cir. 2012).

This defendant has been indicted on two different charges that each give rise to the rebuttable presumption that he should be detained: Count Five, in which he has been charged with the distribution of methamphetamine, in violation of 21 U.S.C. § 841 (an offense described in 18 U.S.C. § 3142(e)(3)(A)), and Count Six, charging the using and carrying of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 924(C)(1)(B)(i) (an offense described in 18 U.S.C. § 3142(e)(3)(B)). As the opinion from *United States v. Sheikh*, 994 F.Supp.2d 736, 739 (E.D.N.C. 2014) (cited by the defendant in his pleading) notes: "Although most rebuttable presumptions found in the law disappear when any evidence is presented by the opponent of the presumption, the rebuttable

3

presumption of § 3142(e) is not such a 'bursting bubble.'" (Citations omitted). The defendant, therefore, must present evidence while the judge remembers that Congress found certain offenders to pose special risks.

Turning to the most salient factors that the Bail Reform Act sets out for the determination of whether release or detention is appropriate, found at 18 U.S.C. § 3142(g), the first is the nature and circumstances of the offense charged, including whether the offense involved (as here) a controlled substance or a firearm. 18 U.S.C. § 3142(g)(1). Indeed, all six of the counts here, not just the two triggering the presumption, involve controlled substances or firearms, and firearms of a particularly serious nature. The second, related factor, is the weight of the evidence against the defendant. 18 U.S.C. § 3142(g)(2).

Here, the facts and circumstances of the offenses are that the defendant came to the attention of law enforcement authorities because some concerned citizens provided information regarding his involvement in methamphetamine trafficking and possession of firearms. According to those citizens, he was angry because his

4

Case 1:16-cr-00088-MOC-DLH   Document 12   Filed 09/09/16   Page 4 of 12

brother died in the custody of the Transylvania County Detention Center in 2014 and the defendant was saying that he planned to die in an outbuilding located on his property when police officers attempted to arrest him, killing as many police officers as possible before his death. Those citizens alleged that the defendant had multiple firearms in an outbuilding located on his property and that he accepted firearms in trade for methamphetamine.

    As result, law enforcement authorities used a confidential informant (CI) on three occasions to purchase methamphetamine from the defendant at his home in Transylvania County. The CI was surveilled by law enforcement authorities, and was wearing a recording device. The first purchase was on July 5, 2016, and the second was on July 11, 2016. During that second purchase, the defendant showed the CI two firearm silencers, but explained that one of them was misaligned with the barrel of the firearm to which it was fitted, causing it to function improperly. The defendant also told the CI that he had a sawed-off shotgun.

In the events giving rise to the indicted offenses, on July 25, 2016, the CI was once again directed to make a controlled purchase of methamphetamine from the defendant. On that occasions, the defendant explained that he did not have the normal amount of methamphetamine that he had been selling to the CI, but that he could offer him something of a package deal involving a lesser quantity of drugs plus a sawed-off shotgun and a silencer. The CI accepted the proposal, and the defendant, in the outbuilding on his property, sold the CI a sawed-off shotgun, a silencer, approximately 2.5 grams of methamphetamine, and two shotgun shells. The CI informed law enforcement afterwards that he had also observed, in the outbuilding, pistols, digital scales, a large box of ammunition, a completed silencer, and what appeared to be several incomplete silencers.

After the grand jury returned the indictment on August 2, 2016, and the Court issued an arrest warrant, the Government formulated a plan to arrest the defendant away from his property, based on the concern that with the firearms he held there, and the reports that he planned to die in the outbuilding when the police tried to arrest him,

6

killing as many officers as possible before his death, an attempt to arrest him at that location would be dangerous for all concerned. Agents therefore conducted surveillance, learned where the defendant was working, and formulated a plan to apprehend him at his job site.

On August 4, 2016, that plan was executed and the defendant was arrested at his job site in Buncombe County without incident. Agents seized a vial containing a pill (which the defendant identified as a Vicodin) and apparent methamphetamine from the defendant.

After being advised of his constitutional rights, the defendant agreed to be interviewed by the agents. He said that he used methamphetamine both by smoking it and by injecting it, and that he had used about a quarter of an ounce over the past two weeks. He initially denied ever possessing a sawed-off shotgun or a silencer, but when Agent Gage showed him photographs of the items purchased from him on July 25, he admitted that he had possessed them. He said he had cut down the shotgun. Although he denied that he sold methamphetamine, he admitted that he acts as a "methamphetamine middleman," getting cash from others and then using that cash to

7

purchase methamphetamine in Georgia. He provided details of where he goes in Georgia to retrieve the drug and then brings it back to North Carolina, saying he makes such a trip to Georgia every two or three weeks, paying $600 per ounce. He then divides the ounces into "eight balls" packages, four or five of which he gives to his North Carolina customer, and the remainder of which he gets to keep.

That same day, federal and state agents executed a federal search warrant at the defendant's home and the outbuilding. There they recovered a shotgun, three rifles, nine pistols, numerous boxes and other containers of assorted brands and calibers of ammunition, seven metal pipes, three possible silencer baffles, one suspected silencer, digital scales, plastic baggies consistent with drug packaging, and a plastic bag with seven syringes.

Therefore, regarding the facts and circumstances of these offenses, the Government has produced ample evidence demonstrating that the defendant has possessed and transferred a sawed-off shotgun and a silencer in connection with distributing methamphetamine. Moreover, although the defendant apparently balks at being called a "dealer" of

methamphetamine, his own admissions place him in the crucial role of a "middleman," repeatedly involved in the obtaining, packaging, and distributing of methamphetamine. The weight of the evidence, including the items purchased and seized from the defendant, and his post-*Miranda* admissions, is strong.

The Court must also consider the history and characteristics of the person, including, as relevant here, his past history of drug abuse and his mental condition. 18 U.S.C. § 3142(g)(3). The defendant's own admissions to the arresting agents, and to the Pretrial Services Report writer, demonstrate a history of continuing illegal drug abuse. Additionally, the defendant has a prior history of mental health issues.

The fourth statutory factor is the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g)(4). With regard to the firearms sold and possessed by the defendant, the evidence establishes that he poses a serious potential risk. There is no legitimate and lawful purpose for his having a sawed-off shotgun and firearm silencers, even in the abstract. Here, though, the Court must also couple that

with the reported statements of his intention to die at his (heavily armed) outbuilding while killing as many police officers as possible, apparently is some mini-Waco style blaze of glory, possibly aggravated by his mental health issues. The defendant simply poses too great a danger, and has not rebutted the presumption, that he would be a danger to the community if he were released.

The illegal drugs and paraphernalia purchased and also seized form the defendant, and his admissions of his regular and repeated "middleman" trips to bring ounce quantities from Georgia back to North Carolina, also establish an additional threat of danger to the community that has been recognized as relevant for Bail Reform Act purposes. As the Fourth Circuit observed in *United States v. Williams*, 753 F.2d at 335, the legislative history of the Bail Reform Act is clear that the concern about safety was intended to be given a broader construction than merely danger of harm involving physical violence. "Persons charged with major drug felonies are often in the business of importing or distributing dangerous drugs and thus, because of the nature of the criminal activity with which they are charged, they pose a

10

significant risk of pretrial recidivism." *Id.*, quoting the Bail Reform Act of 1984, Pub.L. No. 98-473, 98 Stat. 1976,   S.Rep. at 23.

In conclusion, the defendant has failed to rebut the statutory presumption that his release would pose a danger to other persons or to the community.   This Court, just as the Magistrate Judge did, should conclude accordingly, and should order the defendant's pretrial detention.

RESPECTFULLY SUBMITTED, this 9th day of September, 2016.

JILL WESTMORELAND ROSE
UNITED STATES ATTORNEY

s/Richard Lee Edwards
N.C. Bar Number:   30205
Assistant United States Attorney
Room 233, U.S. Courthouse
100 Otis Street
Asheville, NC   28801
Telephone: (828) 271-4661
Fax:          (828) 271-4670
Richard.Edwards2@usdoj.gov

11

## CERTIFICATE OF SERVICE

I certify, on this 9th day of September, 2016, that a copy of the foregoing Sentencing Memorandum was served electronically through the ECF system on counsel for the defendant, James W. Kilbourne, Jr., Esq., at:

jkilbourne@dunganlaw.com.

s/Richard Lee Edwards<br>
Assistant United States Attorney<br>
USAO Asheville, NC